

**IN THE DISTRICT COURT IN AND FOR OKLAHOMA COUNTY**
**STATE OF OKLAHOMA**

**RUBY JONES,**

    **Plaintiff,**

**v.**

**CITY OF OKLAHOMA CITY, a municipal corporation;**
**DAN BRADLEY, in his individual capacity;**
**RYAN STAGGS, in his individual capacity;**
**JAMES RAY, in his individual capacity,**

    **Defendants.**

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR **1 3** 2021

RICK WARREN
COURT CLERK

124

**Case No.** CJ-2021-1303

**Attorney Lien Claimed**
**Jury Trial Demanded**

---

### AMENDED PETITION

---

Plaintiff, Ruby Jones ("Ms. Jones"), by and through undersigned counsel, hereby states and alleges as follows:

### I.

#### INTRODUCTION

1.     This is an action brought under state and federal law seeking redress for Defendants' tortious conduct and deprivations of Ms. Jones' constitutional rights, whereby the *74-year-old grandmother sustained a broken right arm* following Defendants' use of excessive force and failure to intervene in the same.

1



EXHIBIT

3

## II.

### PARTIES, JURISDICTION, & VENUE

2.      Ms. Jones is a resident and citizen of Oklahoma.

3.      Defendant City of Oklahoma City ("City") is a municipal corporation situated in Oklahoma County, Oklahoma. At all times relevant hereto, the City employed Defendants Dan Bradley ("Bradley"), Ryan Staggs ("Staggs"), and James Ray ("Ray").

4.      Upon information and belief, Defendant Bradley is a resident of Oklahoma County, Oklahoma. At all times relevant hereto, Defendant Bradley acted under color of state law and within the scope of his employment as an OCPD officer.

5.      Upon information and belief, Defendant Staggs is a resident of Oklahoma County, Oklahoma. At all times relevant hereto, Defendant Staggs acted under color of state law and within the scope of his employment as an OCPD officer.

6.      Upon information and belief, Defendant Ray is a resident of Oklahoma County, Oklahoma. At all times relevant hereto, Defendant Ray acted under color of state law and within the scope of his employment as an OCPD officer.

7.      The Court has jurisdiction over this matter and venue is proper, as Defendants reside in Oklahoma County and the events giving rise to this action occurred in Oklahoma County.

8.      Plaintiff served Defendant City with a notice of tort claim on November 30, 2020. Pursuant to the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, § 151 *et seq.*, City had to and including February 28, 2021, to respond to Plaintiff's claim but failed to do so. The claim was thus deemed denied in its entirety on March 1, 2021. Because

2

the instant action is filed within 180 days from the date of denial, Plaintiff's claim is not barred by the statute of limitations. Plaintiff has properly complied with all requirements under the OGTCA to bring and maintain this action against Defendant City.

## III.

### FACTUAL BACKGROUND

9.      Plaintiff incorporates by reference the preceding Paragraphs as if fully set forth herein.

10.      On or about August 24, 2020, OCPD officers arrived at the home of Ms. Ruby Jones, located on North Drexel Boulevard in Oklahoma City, Oklahoma.

11.      The officers sought to arrest Ms. Jones' mentally-ill son, Chauncey Jones, who resided at the home.

12.      When Ms. Jones came to the door, one or more officers requested Ms. Jones' consent to enter the home. Ms. Jones provided no such consent.

13.      Officers informed Ms. Jones that they had a warrant authorizing entry into the home to arrest Chauncey, but refused to provide proof of the same.

14.      Despite the lack of consent, one officer physically bypassed Ms. Jones and entered the home. Other officers, including Defendant Bradley, followed thereafter.

15.      Chauncey Jones locked himself in a bedroom following the officers' entry.

16.      Two officers, guns drawn, proceeded down the hallway leading to the aforementioned bedroom and fixed their firearms on the closed bedroom door.

17.      Meanwhile, Ms. Jones had stepped out of the way of officers and stood at the threshold of her bedroom. She remained in view, but out of the way, at all times and never

3

made any threatening or furtive movements towards any officers.

18.     Ms. Jones pled with the officers not to shoot Chauncey. She informed the officers that Chauncey suffered from bipolar disorder and that he did not have a gun in his possession.

19.     As Ms. Jones continued to plea for officers to refrain from shooting Chauncey, Defendant Bradley chided the visibly elderly and physically vulnerable 74-year-old grandmother, telling her, "You're fixin' to go sit in the car."

20.     When Ms. Jones replied that she was not going to sit in a police vehicle, Defendant Bradley walked towards Ms. Jones, grabbed her arm, and forcefully yanked her out of the bedroom. Ms. Jones responded by informing Defendant Bradley that she suffered from heart disease, to which Bradley replied, **"I don't care."**

21.     Once Bradley pulled Ms. Jones from her bedroom, he was joined by Defendant Staggs, who had just entered the home.

22.     Defendant Ray, who entered the home prior to Defendant Staggs, stood in the hallway and witnessed the entirety of the events described below.

23.     Defendant Staggs grabbed Ms. Jones' left arm and Defendant Bradley grabbed her right arm.

24.     Both officers, towering over the approximately 5'0" tall grandmother, moved Ms. Jones towards the front door with her hands behind her back.

25.     As Defendants Bradley and Staggs marched Ms. Jones towards the door, Defendant Staggs cuffed Ms. Jones' left wrist with actual knowledge that his use of handcuffs could precipitate a traumatic response consistent with the OKCPD manual,

4

section 154.0.

26.     At this point, Defendant Bradley pulled Ms. Jones' right arm upwards and at an angle beyond its physical capabilities.



27.     Ms. Jones cried out and explicitly told the officers they were hurting her arm; she naturally and predictably leaned forward to mitigate the pain and avoid further injury.

28.     Pursuant to the OKCPD Operations Manual, 5th ed., "[i]f a person . . . needs to be handcuffed and is injured or has a physical disability/limitation, the handcuffs shall be applied in a manner that provides the most safety for the officer and the person but to the degree possible does not inflict additional injury."

29.     Under the factual circumstances confronting the officers, they knew Ms. Jones was elderly, and that she was in pain as a direct result of their actions, and that it was possible to apply handcuffs to Ms. Jones without causing her additional pain or injury.

30.     One of the two officers, however, inexplicably commanded Ms. Jones to "stop resisting" with actual knowledge that Ms. Jones was not resisting but reacting to the

pain they were causing.

31.    Both Defendant Bradley and Defendant Staggs then immediately threw Ms. Jones against a wall and pressed her face into a mirror.



32.    The joint decision to throw Ms. Jones into the mirror was not justified by any facts suggesting Ms. Jones was suspected of committing any serious crime.

33.    The joint decision to throw Ms. Jones into the mirror was not justified by any facts suggesting Ms. Jones presented an immediate threat to either officer.

34.    The joint decision to throw Ms. Jones into the mirror was not justified by any facts suggesting Ms. Jones was attempting to resist or evade arrest through flight.

35.    Despite Ms. Jones' continued cries and the two officers' clear awareness that Ms. Jones lacked the mobility to be rear-cuffed, Defendant Bradley, with both hands, and Defendant Staggs, now with his right hand grasped upon Ms. Jones' right arm, forcefully pulled and contorted her arm until it reached the handcuffs.



36.     Once both handcuffs were secure, Ms. Jones collapsed to the floor in unbearable pain.

37.     Defendants Bradley and Staggs ordered her to stand up, but Ms. Jones replied that she was unable to do so.



38.     With Ms. Jones in restraints and seated on the floor, Defendants Bradley and Staggs, rather than carefully assist the elderly woman to her feet in a manner that would

7

avoid further injury, inexplicably grabbed Ms. Jones by her handcuffed arms and leveraged them upwards and behind Ms. Jones in an aggressive, unnatural, and unnecessary manner that predictably caused pain and further injury to Ms. Jones.



39.    Defendant Bradley then lifted Ms. Jones using her right forearm, the same forearm he and Defendant Staggs forcefully contorted to handcuff Ms. Jones.



40.    Without any apparent justification, Defendant Bradley then tightened Ms. Jones' right handcuff as she was led out of her home.

41.    In doing so, Defendant Bradley again raised and leveraged Ms. Jones' rear-cuffed arm above her head with knowledge that Ms. Jones was in pain and that his actions would likely cause her further injury.



42.    Ms. Jones suffered a litany of mental, emotional, and physical injuries, including a broken right arm, as a direct result of the techniques used to handcuff and escort Ms. Jones from the home.

43.    Despite informing these Defendant officers that she was injured, Ms. Jones was placed in a patrol car to suffer the severe pain and discomfort associated with an untreated broken arm that remained secured in handcuffs.

44.    The officers' decision to place Ms. Jones in the patrol car without providing any first aid or respond to her cries of pain violated the OKCPD Operations Manual, 5th ed., section 150.02, requiring officers to render first aid or summon medical attention following a use of force.

9

45.     Upon review of the incident relative to Ms. Jones, Oklahoma City publicly indicated two officers would face disciplinary action for their conduct.

46.     Ms. Jones was not charged with or convicted of any crime arising out of the incident, and calls to the City Attorney's office to address compensating Ms. Jones for her injuries went unanswered thereby necessitating this suit.

## IV.

### CAUSES OF ACTION

### COUNT I – 42 U.S.C. § 1983
### Fourth Amendment Violation – Excessive Force
### (As to Defendants Bradley and Staggs)

47.     Plaintiff incorporates by reference the preceding Paragraphs as if fully set forth herein.

48.     At the time of the complained of events, Ms. Jones, as a free person, had a clearly established constitutional right under the Fourth Amendment to be secure in her person and free from objectively unreasonable seizures involving the use of excessive force.

49.     Any reasonable officer would have known of this right at the time of the complained of conduct.

50.     At the time of the complained of events, Ms. Jones was unarmed, not fleeing, not actively resisting, and posed no threat to herself, Defendants, or anyone else.

51.     The use of force by Defendants Bradley and Staggs, under the circumstances described herein, was excessive and objectively unreasonable in violation of the Fourth Amendment for which these Defendants are liable.

10

## COUNT II – 42 U.S.C. § 1983
### Fourth Amendment Violation – Failure to Intervene
### (As to Defendant Ray)

52.     Plaintiff incorporates by reference the preceding Paragraphs as if fully set forth herein.

53.     Defendant Ray was present at the time of Defendant Bradley and Defendant Staggs' actions and, in fact, stood mere feet away from Bradley, Staggs, and Ms. Jones.

54.     Defendant Ray watched as Defendant Bradley and Defendant Staggs used excessive force against Ms. Jones. Despite having reasonable opportunity to intervene and prevent the use of excessive force against Ms. Jones, Defendant Ray failed to take any action to protect Ms. Jones.

55.     Defendant Ray's refusal to intervene in Defendant Bradley and Defendant Staggs' use of excessive force amounted to deliberate indifference to Ms. Jones' federally protected rights, including the right to be free from the use of excessive force under the Fourth Amendment.

56.     Defendant Ray's deliberate indifference to Ms. Jones' federally protected rights, where he was presented a reasonable opportunity to intervene in the actions of Defendant Bradley and Defendant Staggs and failed to do so, violated Ms. Jones' federally protected rights, including the right to be free from the use of excessive force under the Fourth Amendment.

57.     Defendant Ray further failed to report this known incident of excessive force, in violation of 22 O.S. § 34.2.

11

## COUNT III – ASSAULT AND BATTERY
### Oklahoma Governmental Tort Claims Act
### (As to Defendant City)

58.     Plaintiff incorporates by reference the preceding Paragraphs as if fully set forth herein.

59.     In Oklahoma, an individual is liable for battery if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Brown v. Ford*, 905 P.2d 223, 229 n. 34 (Okla.1995) (overruled on other grounds) (quoting Restatement (Second) of Torts § 13).

60.     Similarly, an individual is liable for assault if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." *Id.* (quoting Restatement (Second) of Torts § 21).

61.     Such claims are subject to additional requirements when asserted as against a law enforcement officer. Under Okla. Stat. tit. 21, § 643(1), "an action for assault and battery will not lie for the use of force '**when necessarily committed by a public officer in the performance of any legal duty . . . .**'" *Madoux v. City of Norman*, No. CIV–07–435–M, 2007 WL 4171558, at *5 (W.D. Okla. Nov. 20, 2007) (quoting Okla. Stat. tit. 21, § 643(1)) (emphasis added).

62.     "An officer's use of force is not 'necessarily committed' where such force is excessive or unreasonable." *Payne v. Myers*, 2015 WL 5775188, at *11 (N.D. Okla., Sept. 30, 2015).

12

63.     Here, Defendants Bradley and Staggs' use of force on Ms. Jones was intentional, offensive, unnecessary, unreasonable, and harmful.

64.     At the time of the complained of events, Ms. Jones was unarmed, not fleeing, not actively resisting, and posed no threat to herself, Defendants, or anyone else.

65.     The use of force by Defendants Bradley and Staggs under the circumstances described herein was excessive and objectively unreasonable.

66.     Defendants' assault and battery on Ms. Jones caused her bodily injury, as well as mental pain and anguish.

67.     At the time Defendants Bradley and Staggs assaulted and battered Ms. Jones, they were acting within the scope of their employment as OCPD officers. In particular, Defendants' acts were "incident to ... service[s] being performed for [their] employer or ar[ose] out of an emotional response to actions being taken for the employer." *Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, 867 P.2d 1241, 1245.

68.     Accordingly, Defendant City is vicariously liable for Defendants Bradley and Staggs' tortious conduct.

## COUNT IV – NEGLIGENT PERFORMANCE OF A LAW ENFORCEMENT FUNCTION
### Oklahoma Governmental Tort Claims Act
### (As to Defendant City)

69.     Plaintiff incorporates by reference the preceding Paragraphs as if fully set forth herein.

70.     The actions of the Defendant officers as set forth and described above, constitute the negligent performance of a law enforcement function under the Oklahoma Governmental Tort Claims Act for which Defendant City is liable.

13

## COUNT V – STATUTORY EXCESSIVE FORCE
## Oklahoma Governmental Tort Claims Act
### (As to Defendant City)

71. Plaintiff incorporates by reference the preceding Paragraphs as if fully set forth herein.

72. The actions of the Defendant officers as set forth and described above, constitute the statutory excessive force in violation of 22 O.S. § 34.1, actionable pursuant to the Oklahoma Governmental Tort Claims Act, for which Defendant City is liable.

## COUNT VI – *MORALES* CLAIM
## Oklahoma Governmental Tort Claims Act
### (As to Defendant City)

73. Plaintiff incorporates by reference the preceding Paragraphs as if fully set forth herein.

74. The actions of the Defendant officers as set forth and described above, constitute the excessive force under the standards set forth in *Morales v. City of Oklahoma City*, 2010 OK 9, 230 P.3d 869, actionable pursuant to the Oklahoma Governmental Tort Claims Act, for which Defendant City is liable.

## V.

## RELIEF REQUESTED

75. As a direct and proximate result of the Defendants' acts and omissions as set forth above, Ms. Jones suffered injuries and damages for which they are liable, including without limitation:

   a. Physical pain, past and future;

   b. Humiliation, degradation, loss of enjoyment of life, and emotional distress,

14

past and future;

c. Economic losses, past and future;

d. Litigation expenses associated with the prosecution of the instant action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and the maximum judgment interest permitted by law; and

e. Any other expenses allowed by federal or state law, including but not limited to reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiff prays for Judgment against these Defendants as follows:

a. Compensatory and nominal damages against all Defendants;

b. Punitive damages against Defendants Bradly and Staggs;

c. Costs in this action, including reasonable attorney fees, interest, and costs pursuant to 42 U.S.C. § 1988; and

d. Any and all other relief as provided by law;

e. The relief the Court deems just and equitable.

Respectfully submitted,

Damario Solomon-Simmons, OBA No. 20340
**SOLOMONSIMMONSLAW**
601 S. Boulder, Ste 600
Tulsa, Oklahoma, 74119
(918) 551-8999 (telephone)
(918) 582-6106 (facsimile)
dss@solomonsimmons.com

-and-

J. Spencer Bryan, OBA No. 19419
Steven J. Terrill, OBA No. 20869
**BRYAN & TERRILL**
3015 E. Skelly Dr., Ste 400

Tulsa, Oklahoma 74105
(918) 935-2777 (telephone)
(918) 935-2777 (facsimile)
jsbryan@bryanterrill.com
sjterrill@bryanterrill.com

-and-

M. Kevin McIlwain, OBA No. 34407
**SMILING, SMILING & BURGESS**
Bradford Place, Suite 300
9175 S. Yale Avenue
Tulsa, Oklahoma 74137
(918) 477-7500 (telephone)
(918) 477-7510 (facsimile)
kmcilwain@smilinglaw.com

***Attorneys for Plaintiff***